Case number 10-0759, Normal Waters v. City of Chicago. All right. Counsel, I think everybody knows 15 minutes for each side. We're just asking the appellant to step forward, introduce yourself as well as the party you represent. Francis Patrick Murphy with Corboy and Demetrio for the plaintiff, Normal Waters. That's all. You can proceed and then we'll get the appellees to introduce themselves. May it please the Court. On June 2, 2010, an umpire made a mistake and cost the Detroit pitcher a perfect game. That mistake could not be corrected by a Major League Baseball. On February 24, 2010, Judge Brewer made a mistake that cost Normal Waters her day in court. You can correct that mistake. The central issue this morning is whether the record before you shows one of the two limited exceptions to an open and obvious condition. Let me stop you right there. So you are conceding that it is an open and obvious situation that she encountered? We are. Okay. Deliberate encounter does not apply. So it's whether or not there's a valid distraction theory. The basic long-standing principle in a fall-down case is if you know of a defect, see the defect before you step into it, step into it, and that defect causes you to fall, you have no case because there's no duty on the part of the landowner because of that open and obvious condition. That's slip-and-fall 101. Unless one of the two exceptions apply, and in this case I believe the distraction theory does apply. Judge Brewer applied mainly the Prostend case. Well, let's discuss the distraction theory itself. Yeah. Because the situation was that she encounters this open and obvious situation on the sidewalk, and you believe that the facts support that she was distracted at that point and then fell. Correct. Well, it seems to me, as I recall some of her testimony, she was very, very careful as she began to traverse those three barriers there. So she was anything but distracted. This situation sounds more like, if there is such a doctrine, a startling event where she was startled and that startling caused her to remove her eyes from that careful progress that she was making across these three barriers. So it wasn't, I'm not so sure that it's distraction at all. I'm not sure that the startling event can't be a distraction theory. This is not personal inattentiveness such as the babysitter, such as in the Bono case. Yes, Norma Waters was being very careful as she encountered the known defect in the crosswalk, and that known defect was either the angle iron basis of the barricade or there was a little cutout hole. She was past the hole. One of the principles in, I think, personal injury jurisprudence is that the culpable party could have done something to have prevented the accident. What do you believe could have been done here to have prevented the accident? Two things. One, they could have closed off, and if I just back up. This is not, as my esteemed colleague said in his brief, this is not a barricaded construction site. This is an open crosswalk open to the public. There were barricades encroaching that crosswalk. They could have either put the, if they wanted to use that style of barricade, moved it further up so that it didn't encroach the public crosswalk, or they could have closed off the crosswalk and directed people to the other side. So you're saying that they should have taken additional steps to prevent someone from even trying to cross there? Is that what you're saying? No, I am saying that if you decide to leave the crosswalk open to the public, and you're going to put barricades there, just don't have the angled braces encroach into the crosswalk, or use the type of barricades that don't have angled iron braces. But doesn't the barricade itself shout out, open an obvious danger here, be very, very careful? No, these are just barricades to prevent cars from going westbound on Higgins. Eastbound on Higgins was still open. That's what those barricades were there for. Now, does it indicate that there was construction in the area? Of course. No doubt about that. But the known defect is in that crosswalk is only those angled irons, which she was being careful, and would have crossed, but for the startling event. So you're saying that the startling event could have been anything. It could have been the honking of a horn, and had the horn, some car honked the horn, and distracted her, and following just as she did here, that liability, or at least a factual question would still be present, whereby a trier of fact could still find liability. Not necessarily, because there are some cases which I disagree with that say that the startling event, the distraction, has to be caused by the defendant, caused, created, or responsible for. So a passing motorist who honks a horn, it has nothing to do with the city of Chicago, may not qualify under the appellate court decisions as being an appropriate caused event. However, if it was a police car, or an ambulance, city of Chicago that came by, and that startled her, then I would say that qualifies. The city of Chicago can't do anything to startle her, but anybody else can, and no liability may apply. Well, no, see, this is where I disagree. I think that some of the cases now say that it has to be a city of Chicago caused defect. It has to be a defendant caused defect. Yeah, well, what happened to the defect where there's a height elevation on State Street, and somebody on the day after Thanksgiving is looking at Macy's windows, trips over that? That used to be a distraction. Now, under the current case law, I'm not sure that it is. Well, I mean, when you say current case law, there's no Supreme Court cases. Correct. I mean, if you go in with Supreme Court cases, the old city of Springfield case, I mean, that's the case 203, I mean, the distraction could come from a third party. Correct. So when you talk about the fact that there is case law, you're talking about the appellate court. We don't make the law. The Supreme Court makes the law. Well, from where I practice, you make the law too. And where the circuit court practices, we make the law as well, until there's a different decision by the Supreme Court. Until then, they have to follow the law that the appellate court makes. But anyway, we're not really – this case really doesn't tie into the source of the distraction so much as whether that sort of distraction itself can lead to liability, because I have to say that what if she had just been crossing the sidewalk and she was just about to put her foot and she was on the street and encounters the curb and she was just about to put her foot on the parkway and she hears something startling, that very same jackhammer, and she trips and falls. Nothing there other than the distraction event that caused her injury, caused her to misstep. Isn't that the same thing? I mean, the existence of those barricades really didn't lead to the injury so much as the distraction led to her – I mean, the sound led to a distraction which caused her to misstep. Well, let me ask you this. Is there any case law that you know of that says that the distraction is the cause of the accident? The distraction is the exception, is it not? It is. It's the exception to the norm. And then everything becomes a question of fact for the trier effect. Correct. Because what happened here is you were precluded from going to the trier effect. I was. So let me make myself clear then. Based on Justice Gordon's discussion with you, are you saying that the situation where the person is stepping onto a curb and is distracted by jackhammers and missteps and falls, that that presents a question of fact that must go to a trier effect to be resolved as to liability? No, because if the curb is in a proper maintained condition, that's not a defect. So when a curb is in a proper maintained condition, then a distraction simply falls to the person that's traversing that curb to be extra careful maybe or to try to respond to that distraction in a way that doesn't cause her to misstep? Correct. Let's assume that Norma Waters is crossing in the crosswalk, and because of the startling event, she doesn't trip over the angle iron, but just trips over her own feet. She was still startled. She may still have been distracted, but the known defect didn't cause her to fall. Well, let's go back to Kmart. What was the defect in Kmart? The defect was a concrete stanchion in front of the store. Why was that a defect? That's a very good point. That's no different than a curb. It really isn't, is it? Pardon me? It really isn't. It isn't. In that particular case, they held when the person was distracted because of carrying the mirror and ran into a perfectly maintained stanchion or curb. I'll change my opinion. But there it is. Well, there it is. Exactly. There it is. There it is. It is not a startling event in Kmart. It is a distraction that virtually every customer coming out of Kmart that has a large package may be entirely focused on maintaining that package in front of him or her and walks into these barricades that are these poles sticking out of the ground that may have been seen on the way in, but you forget that they're there on the way out. So it's not a startling event. And that's the difference between Kmart in this case. You're talking about a startling event that is simply outside of anybody's control. Kmart could have maybe put up a sign or done something to prevent, to let those who are carrying that big package coming out of the store to remember that there are these poles sticking out of the ground. In this case, I just wonder what could the city have done other than basically reconstruct the construction site, as you say, put the barriers in a different way, maybe put higher barriers or done something to prevent people from walking in there. But I'm not sure that that's a reasonable alternative. Well, it is so reasonable to just move the angle irons or use a different type of barricade that presents the same message to the vehicles entering westbound that it's closed. That doesn't present a known issue. They might have sold the package to the individual who bumped into the post. Correct. Here's another situation with a parkway. When she's walking in the parkway and there are these roots of a tall tree sticking out of the ground and she's watching herself and then gets startled and trips over a root of a tree that's protruding from the ground. Why isn't that the same situation? Because if she's in the parkway, normal negligence doesn't apply. I have to prove that it's like a trap or a snare hole. Parkway law is different than if she's in a crosswalk, which is open to the public. Then we're going back to the open and obvious issue. The open and obvious, I contend, is what is the danger in the crosswalk? Not as Judge Brewer did, which was expanded from the known danger objectively into the dangerous condition. There's nothing in the record objectively to say that that dangerous condition applied here. What she was trying to do was to take the danger that was objectively seen in the record in the crosswalk and then said, okay, the whole construction site from Higgins all the way out or from Milwaukee and Higgins all the way out six blocks is part of the dangerous area. She could have avoided that entire construction site. I think that's what was conceded in there. She chose to walk on that side as opposed to walking on the other side. But the crosswalk was open, wasn't it? Yeah. Could she have avoided it? Yeah, she could have gone right from her house to babysit for her daughter's children without going to the bank. Anything is possible. But as long as the city opens up to the public and leaves it open, the crosswalk, it's there for her to use. There's no defense that she wasn't intended or permitted to use that crosswalk. She was. During this construction. The only question is whether that jackhammer sound is one of those chains of causation to result in liability for the city when a jackhammer sound is something, as you've conceded, is part of the notice that is provided when you have barricades up. This construction is going to be going on. And I would agree with Justice Gordon that that's a question of fact, that I wasn't able to present to the jury. And I think a jury would agree that if a lady is walking carefully, as normal was, in the crosswalk and was startled by some sound, not by personal inattentiveness, but startled by that sound, that qualifies as sufficient cause for her to fall. Once again, we go back to one of my original questions, which is, once again, what should the city have done to have prevented this from happening? They should not have put the known defect, the danger, in the crosswalk. If they're going to close the crosswalk. Do you think they should have used different barricades? A different kind of barricade that didn't intrude upon the crosswalk. Correct, without the angle line. I think the photographs are an evidence. There's angle line that encroaches onto the crosswalk. They could have put a barricade there without that type of brace. So the barricade may have given notice that it was open and obvious, but the barricade itself created more open and obvious danger? Not more. We know what the danger is. The known danger is. Well, it wasn't. The barricades really aren't there to create a danger. They're there to give notice of a danger. Okay, but the barricade has to sit on some sort of a base. They could have used a barricade that had a different type of base that eliminated in an open crosswalk the angle iron, which was a tripping hazard. That's what they could have done. We'll give you a couple minutes to review. Before you leave, the danger was the angle iron? Yes. Okay. I want you to make that clear. That's what you're contending the danger was, the angle iron? Yes. The base of the barricade is that angle iron. And the angle iron was part of the barricade. Correct. Okay. But your client saw the angle iron, saw the barricade, and so it wasn't that it presented – it was there. I'm not sure. Are you really saying that she was distracted? She was distracted, of course. She saw the first two, didn't see the third because she didn't see the third? No, that's my question. Are you saying that the first two angle irons, or however they're described, present – They were open and obvious. Well, no, but they also had a danger as well, presented a danger. Is that the danger that your client wasn't able to avoid? She did avoid the first two. She did. She knew the danger there, and because she was careful, she was able to avoid them. It was only because she was distracted that she fell over the third one. If she hadn't looked to the loud boom, she wouldn't have fallen over. She would have gone home and babysat. All right. Cut her down. Thank you. Thank you. Good morning. Mark Powell of FTC Chicago. You'll need to keep your voice up. May it please the Court. Plaintiff here chose to walk into a barricaded construction site and encounter the metal stands of barricades in a crosswalk rather than take an alternative path. What if it had been a city police car that had been passing and the siren had – or even just visually observing the police car go by? Would that change the result in your view? That is, a distraction that is directly traceable to the city, like a police car? I would say it would not because the decision to enter the destruction zone, and I know counsel has said that this was – there were the barricades on the one side and the – Well, we're conceding that it's open and obvious. It's open and obvious. Because she had traversed part of it anyway without any incident. She did, very carefully, walked over two barricades. Stepped over – she wouldn't walk over two barricades. She stepped over – The stands, yes. The feet. Yes. That were holding up the barricade. Correct. And she had stepped over the two of them anyway. Yes. Let me ask you this. Does the distraction have to be something that's caused by the city? Yes, it would. I think that's – Is that your position? That's the city's position in this case? Or are you saying that we should adopt the case law that says that? Because there are different cases that say – that take opposing views. I believe the case law generally says that the – to qualify as a distraction, among other things, the defendant must have contributed, caused, or created somehow – created the distraction somehow. What's the rationale for that rule? Because it doesn't seem to make sense that if distraction is a – if the defendant should be considered to reasonably foresee a distraction, what's the difference what the source of that distraction is? Your Honor, I believe it's because there are cases where personal attentiveness is the cause of the distraction. We're not saying that that's true. Well, in Kmart, the individual created the distraction themselves by carrying a package. Correct. Now, admittedly, they had purchased the package in the store, but that doesn't make – or does it? The defendant, the cause of the distraction. It does. I mean, they chose to place that concrete post where they did, right by the exit. Well, what was the distraction in Kmart? It wasn't the concrete. No, that's correct. It was the package that the person was carrying. Correct, and that was reasonably foreseeable. Somebody emerging from the store with something they had purchased. Correct. Let's set aside that case law that says the distraction must come from the defendant. Let's stick with the case law that says it doesn't make any difference, or certainly, to be consistent with Kmart, no such element exists in this sort of case. Why isn't this a case where a factual question has been raised and we should leave it to the wisdom of the jury to decide whether liability exists or doesn't exist?  The first is that the distraction here, if it can be called that, was a result of – It was a sound, wasn't it? It was a sound, but it wouldn't – But does that make a difference? No, I don't believe it does. But the fact that she was in this area to begin with was – I mean, the distraction, the startling sound wouldn't have mattered if she hadn't been in this position to begin with, and she chose to do that, put herself in that position. And the – Well, wasn't that how you distinguished it from Kmart? Excuse me? Is that how you distinguished it from Kmart, the fact that she didn't have to go across that – Yes, Your Honor. Not that there was compulsion in Kmart, but that this was – That was the only exit from Kmart's store. He had to go out that way. Correct. And those posts were there to keep the carts in. Yes. And the other point I would make is that really the condition here – you can't isolate the barricades from the construction zone. The barricades were on one side of the crosswalk, and the other side was the working area. There was a large pole to the right of the crosswalk. There were more barricades, and work was going on all down that westbound lane. The barricades extended into the permitted area where she could walk. That's correct. And they were a known, open and obvious risk. Yes. And the fact is that – Why should the nature of the distraction – in other words, its origin – why should that have anything to do with whether or not she should recover?  Well, the post was part and parcel of the Kmart store. But the distraction was the large bundles. So what difference does it make what the distraction was? Well, it wasn't part of the dangerous condition. The bundles weren't themselves dangerous, or they weren't a natural part of the concrete post. You can really separate the two. Well, then it was the sound of the jackhammer. Well, our submission is that it was because it's a natural part of the construction zone. There are going to be loud noises from construction equipment operating, and when one enters a zone like that, one should reasonably foresee that there are going to be loud noises. Why didn't the city just barricade that site? Well, Your Honor, it's not clear from the record, but the court would never get to that question without first examining whether this plaintiff had a duty to – well, she did have a duty to exercise reasonable care for her own safety. There are costs involved with barricading the entire site. I mean, I don't think some citizens would want the city to barricade every time there's an open and obvious risk, and we're talking simply of the lake supporting the barricades, to barricade the entire – it seems like overkill. And it's an expensive thing to do each and every time, so I think we have to give room for reasonable means to give notice of an open and obvious danger, and to ask for more might be more expensive for everyone. I would agree, and I would just add that claims about the failure to post barricades are immunized. Yes, I understood, Your Honor. But I would like to add that claims about the failure to post barriers or signs are immunized under Section 3104 of the Tort Immunity Act. So the city couldn't be liable anyway for failing to place those barriers. Let's get to a little case law. So Judge Brewer gave a specific case that she believed controlled the outcome of the motion that was before her. Why was her legal reasoning correct? Her reasoning was correct because conceptually, to be sure, there it was easier to see perhaps that the condition and the distraction – excuse me, the danger and the distraction were all part of the same condition. It was all part of the dug-up sidewalk. Well, you're not arguing the fact that she wasn't distracted, are you? No. For purposes of summary judgment, we did not contest that. She was distracted. The question is whether or not we can attribute the distraction to something that you could have prevented by doing something other than you did. Correct, Your Honor. And in Prostrand, the court said that it would not extend the distraction exception to a distraction that was itself part of the dangerous condition. Conceptually, this case is analogous. The construction zone included the barricades. But it also included at least the possibility that there would be distracting sounds. That's correct. Associated with the construction. Yes. And the plaintiff was aware that construction was going on at this location, too. She walked by the intersection on the other side of the street. She's in worse position than the guy in Kmart who created his own distraction by carrying the package the way he did. That's correct. Don't you find that somewhat ironic? Well, no, because, again, in Kmart, there really wasn't a way around this. This is the exit from the store. Sure there is. They could have held the package differently. Well, I'm not sure that that still would have allowed him to see around the huge mirror that he was carrying out of the store. And there were large, bulky items in this Kmart, and this is reasonably foreseeable that people will have these. In fact, the defendant there is actually encouraging this, wants this to happen. There's nothing like that in this case. She didn't have to go into this construction zone. Here's one other difference. In Kmart, those poles sticking out of the ground were meant to benefit Kmart by keeping their carts out of the parking area or out too far from the store. The barricades here I thought were meant to benefit the pedestrians by giving them notice that danger exists here. Be very, very careful. And those who choose to walk among danger had to be even more careful and be sure not to get startled because noises occur in big cities all the time, unexpected noises. That's right. All right, well, you can wrap up. Okay. I'd just like to add in closing that as far as the four-factor duty test goes, we're not aware of any decision in which the court has found a condition was open and obvious and then gone on to find a duty despite that, where no exception applies. But as we've stated in our brief, the burden is significant here. Plaintiff says it was just a matter of closing off this crosswalk, but there obviously are costs involved. You can't just look at this particular location. There are thousands of miles of streets and intersections and crosswalks, and any time construction takes place next to that, we would have to close off the crosswalk or otherwise monitor and ensure that nothing, no obstructions of any kind. Well, you would have had to ensure that the feet of the barriers didn't protrude into an area where people were permitted to walk. Among other things, yes, there could be any obstruction really, though, I think, if this principle were extended. And I would just add to that. Let me ask a question, or let me put out a question to Justice Cahill's observation because I'm not sure we can get a concession from plaintiff's counsel that if the barricade did not extend into the walkway, that had she been walking a little bit outside of that walkway and the barricade feet still posed a problem and she was startled at that moment, that a lawsuit would not have been filed because she wasn't within that narrow area where pedestrians are allowed to walk, where are expected to walk. That's no certainty at all. So how should we write this in order to find for the city? Well, Your Honor, I believe the circuit court was correct to Well, this is a summary judgment case. We don't really care about the circuit court because we have to write an opinion that Understood. I just wanted to say that Crosstran does give, it guides the decision in this case. So Crosstran would be the case we should follow? Among others, yes. And that is a Supreme Court case? No, Your Honor, that is a public court case. It may not be, well, no, the entire analysis is there, but it is drawn from Supreme Court cases, Salami and the others, so there is ample precedent to guide the court's decision here. All right, thank you very much. Thank you. Mr. Murphy? Gregory, Crosstran is not the case that you would rely upon. What would be the case on your side? Well, Diebert and Schaefer are two cases involving associated activities in a construction zone, known throw slips during construction of a building, discarded materials come off, known that happen all the time. Here a gentleman comes out, no event. But in those situations we're talking about employees. We're talking about employees. Employees that really had no choice but to be there to begin with.  The other side of that area, that's their work zone. They had to be there. The pedestrian could have taken a different path. Okay. Well, the other one I was going to say was Schaefer because there is a gentleman also building a house who cut out the flooring for the hole for the stairway, and the court said it was proper to be looking at your co-worker when you're carrying a heavy package and fall in the hole you just cut out. I think any hole should be barricaded. Prostrand is just simply an iteration that you can't, as a fall down lawyer, you can't say I'm looking at part of the known defect, and because my focus is over there, that same defect caused me to fall. You can't do that. There's got to be an external event. In Prostrand there was no external event. There was no police car, no car at all going down there. Here's the difficulty I have. She's able to walk over two barricades because she was being very careful, and it's only at the third barricade that she falls. And so I have difficulty accepting any kind of danger posed by what she was able to do, cross over two identical things previously. The danger had to really come from that outside source. No. The danger is the angle line, just like the stanchion in Kmart. The distraction, the big bulky box, looking to see if you're going to get crowned by debris falling down on you, that's the distraction, which is the exception to the known danger. And based upon that, I believe that Your Honor should reverse judgment. All right. Well, thank you very much. The case will be taken under advisement.